UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


THEODORE LEHMIER,                :     **CIVIL NO. 1:09-CV-0478**
                                 :
            Plaintiff            :     (Judge Conner)
                                 :
       v.                        :     (Magistrate Judge Smyser)
                                 :
DOUGLAS J. AUSTEN, PH.D.,        :
COREY L. BRITCHER, and           :
TERRENCE KANE,                   :
                                 :
            Defendants           :


## REPORT AND RECOMMENDATION


**Background**.

       This Report and Recommendation addresses the motion of

the plaintiff for summary judgment and the motion of the

defendants for summary judgment.


       This is a 42 U.S.C. § 1983 civil action.  The plaintiff

claims that his federally protected rights were violated by

officers of the Pennsylvania Fish and Boat Commission (PFBC) at

the Raystown Lake in Huntingdon County, Pennsylvania.

The plaintiff and his son were riding jet skis at Raystown Lake and were stopped by and accused by defendants Waterways Conservation Officers (WCOs) Britcher and Kane of no wake zone violations. The complaint describes the circumstances that gave rise to this allegedly wrongful accusation, allegedly a case of a mistaken impression on the part of the officers that it was the plaintiff and his son who were the jet ski riders who had been speeding in the area where the plaintiff and his son were jet skiing. The interaction between the plaintiff and the WCOs was hostile; the plaintiff accuses the WCOs of rudeness and of a confrontative demeanor.

The incident on Raystown Lake occurred in 2005. The charges against the plaintiff were the no wake violation and a charge of interfering with an officer. He and his son were found guilty of the charged summary offenses. In 2006, the WCOs initiated boating privilege revocation proceedings against the plaintiff. His boating privileges were suspended for one year. Believe

The plaintiff spoke critically about the PFBC and the defendants in letters to public officials and on the Bob Durgin

radio show after he and his son were found guilty of the summary offense charges. The defendants recommended to the PFBC that it impose a two year boating privilege suspension against the plaintiff. The plaintiff claims that the recommendation of a two year suspension was in retaliation for his exercise of his First Amendment right to freely and openly criticize public officials.

The plaintiff was, prior to this incident, a person who listened to the Bob Durgin radio show. Bob Durgin had a run in himself with the officers of the PFBC. On the Bob Durgin radio show, Bob Durgin calls the officers of the PFBC "boat Nazis". When the plaintiff and his son had been stopped and charged for no wake zone violations at Raystown Lake by defendants Britcher and Kane, the plaintiff said to these defendants, "this is why they call you guys 'boat Nazis'". The plaintiff said this to the defendants after defendant Kane had told the plaintiff that he would rather deal with drunk boaters than with the plaintiff. (Doc. 44-2, pp. 46-47).

The discovery period ended on January 4, 2010. (Doc. 40). The plaintiff's motion (Doc. 43) for summary judgment and a brief in support (Doc. 44) were filed on January 29, 2010. The plaintiff filed no LR 56.1 statement. The plaintiff's summary judgment exhibits were filed with his brief. The defendant filed a motion (Doc. 45) for summary judgment, a LR 56.1 statement (Doc. 46), a brief in support (Doc. 48) and exhibits (Doc. 47) on January 29, 2010. Briefs in opposition (Docs. 51, 53) were filed on February 22, 2010. The defendants filed a Response[1] (Doc. 52) to the plaintiff's motion for summary judgment. Reply briefs (Docs. 54, 55) were filed on March 8, 2010.

**Summary Judgment Standard**.

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial

---

1. The Response is in the nature of a pleading, responding on a numbered paragraph basis to the numbered paragraphs of Doc. 43.

responsibility of informing the court of the basis for its

motion and identifying those portions of the record which

demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With

respect to an issue on which the nonmoving party bears the

burden of proof, the moving party may discharge that burden by

"'showing'-- that is, pointing out to the district court --

that there is an absence of evidence to support the nonmoving

party's case." *Id.* at 325.  Once the moving party has met its

burden, the nonmoving party may not rest upon the mere

allegations or denials of its pleading; rather, the nonmoving

party must "set out specific facts showing a genuine issue for

trial."  Fed.R.Civ.P. 56(e)(2).


A material factual dispute is a dispute as to a factual

issue the determination of which will affect the outcome of the

trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  "Only disputes over facts that might

affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248. A dispute as to an issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper

inquiry of the court in connection with a motion for summary judgement "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

**Undisputed Facts**.

The material undisputed facts for purposes of the two pending summary judgment motions are those stated in the single LR 56.1 statement of facts filed in support of and in opposition to the two pending motions. (Doc. 46). The undisputed facts are as follows:

On September 3, 2005, the plaintiff and his son were riding jet skis at Raystown Lake when they were stopped by WCOs Terrance Kane and Corey Britcher for riding too fast in a no wake zone. The WCOs claim that the plaintiff was rude, abusive and out of control during the stop. The plaintiff claims that the WCOs were rude, abusive and out of control during the stop. The plaintiff was cited by WCO Britcher for a no wake zone violation and for interference with an officer. The plaintiff contacted the PFBC complaining about the defendants and he also wrote a letter to the PFBC stating his complaints. The PFBC conducted an investigation of the plaintiff's complaints.

The plaintiff contacted his state senator about the incident. The plaintiff went on a radio talk show during which

he accused the WCOs of misconduct.  He contacted the Pennsylvania State Police, requesting the Pennsylvania State Police to file criminal charges against the WCOs.  He sent a letter to the District Justice who was to preside at his criminal trial on the charges brought by the WCOs, claiming that the WCOs had mistreated him and that he was innocent of the charges.

A summary trial was held before District Justice Jamison on November 22, 2005.  The plaintiff was found guilty of both charges, the no wake zone violation and the interfering with an officer violation.  He did not appeal the verdict.

Being found guilty of interfering with a WCO triggers boating revocation[2] proceedings by the PFBC.  After the plaintiff's appeal period had run, the PFBC initiated revocation proceedings against the plaintiff.

---

2.  "Revocation" and "suspension" are used interchangeably in PFBC vocabulary.

On March 3, 2006, WCO Kane wrote a memo to WCO Britcher which outlined the interaction of WCO Kane and WCO Britcher with the plaintiff and recommended to Britcher that the WCOs recommend to the PFBC a two year revocation. WCO Britcher filled out and submitted a PFBC form recommending that the plaintiff's boating privileges be suspended for a period of two years. Recommendations of two year suspensions had been made in the cases of other boaters convicted of the offense of interference with an officer.

On May 25, 2006, the PFBC issued an order to the plaintiff to show cause why his boating privileges should not be revoked. The plaintiff, through counsel, filed an answer requesting a hearing. An administrative hearing was held on September 18, 2006. By agreement of counsel no live testimony was presented. The transcript of the criminal hearing before District Justice Jamison was entered into evidence. The parties were given 30 days to submit written explanations of the party's position as to whether the plaintiff's boating privileges should be suspended.

On September 27, 2006, WCO Britcher sent the hearing examiner a letter recommending a two year suspension. The plaintiff's counsel sent a letter to the hearing examiner on October 16, 2006, arguing that the plaintiff's privileges should not be suspended. The letter did not raise any issue relating to the plaintiff's First Amendment rights.

Defendant Dr. Austen, the Executive Director of the PFBC, recommended a one year suspension to the PFBC, and a one year suspension was imposed by the PFBC. The plaintiff was notified that the recommendation that his boating privileges be suspended for one year was accepted and he was told that he had 30 days to file exceptions. Neither party filed exceptions. The plaintiff's boating privileges were suspended for one year. The plaintiff filed an action in the Commonwealth Court of Pennsylvania challenging the suspension, to which the PFBC filed an answer. The Court quashed the appeal on the grounds that the plaintiff had not filed any exceptions to the Commission's recommendation. The Court noted that when a party in an agency proceeding fails to raise an issue, even one of a constitutional dimension, the issue is waived and cannot be considered on

appeal.  The Pennsylvania Supreme Court upheld the Commonwealth
Court's decision.

**The Plaintiff's Motion for Summary Judgment**.

The argument of the plaintiff for summary judgment is
that the undisputed material facts of record demonstrate that
the defendant PFBC WCOs retaliated against the plaintiff because
he exercised his First Amendment rights to free speech and to
petition the government.  The plaintiff has not filed a LR 56.1
statement of the material facts as to which the plaintiff
contends that there is no genuine issue to be tried, but we have
considered the plaintiff's statement of facts in his brief.
(Doc. 44, pp. 2-6).  The plaintiff does not present the
underpinnings for the plaintiff's assertion that, when
considered within the framework of the plaintiff's summary
judgment theory, there are no undisputed material facts of
record.

The plaintiff advances his argument by initially noting
that he engaged in First Amendment activities when he sent
letters to the defendants' supervisors and to his state

representative detailing the defendants' conduct, when he communicated with the Pennsylvania State Police and with the magisterial district judge about the defendants' conduct and when he voiced his complaints about the defendants' conduct on a radio show.

The plaintiff then asserts (Doc. 44, pp. 13-14) that it is not in genuine dispute that "their revocation recommendations were substantially motivated by Mr. Lehmier exercising his First Amendment activities." (Exhibit C, p. 2 and Exhibit E).

In support for the position that the defendants retaliated, the plaintiff's brief refers to and quotes a writing of defendant Kane. (Doc. 44, page 5). The referenced writing is the March 3, 2006 memorandum from defendant Kane to defendant Britcher. (Doc. 44-2, p. 125). The quoted portion is as follows:

> His complaint letter to Regional Manager
> Lauver was equally troubling. His memory of
> the events on that day are nothing less than a
> very distorted and twisted recollection of
> those events. The outrageous accusations of
> us shouting at him to "Shutup", attempting to
> head butt him, spitting on him and stating

that I was going to beat the shit out of him
if he did not shut up are outrageous. His
reference to a "Rodney King incident" also
speaks of his frame of mind to wit: I think he
was attempting to escalate this contact into a
physical confrontation.

Mr. Lehmier also showed no respect for the
court system. After being sworn in, Mr.
Lehmier blatantly and repeatedly failed to
provide truthful testimony. Mr. Lehmier
accused me of using the "F" word during
testimony, but failed to mention this
important detail in his complaint letter.

The plaintiff argues that the revocation

recommendations written by WCO Kane to WCO Britcher and those

set forth in the September 27, 2006 memorandum of WCO Britcher

to the PFBC

focused not on Mr. Lehmier's conduct on the
Lake or how that conduct interfered with the
officers' investigation. (**Record references
omitted.**)  Rather the revocation
recommendations focused on how Mr. Lehmier's
First Amendment activities, his accusations of
the officers' conduct, whether true or not,
made them look to the public and how Mr.
Lehmier's accusations caused the officers to
be perceived by their superiors.  He
criticized them to the public and he
criticized them to their superiors. Clearly,
the officers' focus was on the fact that Mr.
Lehmier's First amendment activities made them
look bad.  Their recommendations were a

14

> personal reaction to what they perceived to be
> a personal attack on their character as
> Waterways Conservation Officers.  Their
> recommendations were a direct reaction and
> response to Mr. Lehmier's First Amendment
> activities.

(Doc. 44, pp. 10-11).

A reasonable trier of fact could not construe the writings of the WCO defendants on their face to reasonably support the inference that the writers' motives were retaliation for the plaintiff's public statements.  The WCO defendants were recommending an appropriate boating privileges response to the conduct of the plaintiff.  Their participation in the process was obviously usual, customary and expected, since they were the charging officers and the witnesses of the misconduct.  Their recommendations are made up of their recall of what they had witnessed, of their reaction to it, and of their opinion as to the boating privilege revocation question.

It is very significant, as to the question of whether there is a genuine dispute as to the issue of retaliation, that the proper and prescribed role of the WCOs, as a function of their job duties, was comprised of a combination of actions

(stopping the boat, issuing violation notices, appearing for trial and having input to the revocation proceeding) all arising from and all taken in one case. What they did was all a part of one case and was an ordinary, not an extraordinary, exercise of the duties of a WCO. Assuming *arguendo* that the WCOs had no retaliatory motivation, it can not be reasonably suggested that the WCOs in routinely completing a revocation recommendation arising from an on-the-lake incident, an incident involving violations, violation notices and a conviction, would have or should have omitted in their summaries of the case for the Commission any reporting of the offender's post-incident statements and conduct relating to what had been a confrontative and hostile on-the-lake interaction between WCOs and a boating rules offender. The offender had made statements about the incident and the WCOs had heard of the statements made by the offender about the incident. The WCOs were supplying their account to the Commission of what had happened in response to what the offender had stated, and were appropriately doing so in official reports and not in the media.

The plaintiff asks the court to assume for the purposes of this case that he had not committed the violations of which he was convicted, a no wake zone violation and an interference with an officer violation.  The court has no basis to consider it to be in dispute whether the plaintiff did commit a no wake zone violation; he was convicted of committing that violation. Accordingly, it follows, the interaction between the WCOs and the plaintiff on September 3, 2005 came about in an appropriate law enforcement context.  The court has no basis to consider it to be in dispute whether the plaintiff did interfere with the performance of duties by a law enforcement officer; he was convicted of interfering with an officer.  Accordingly, it follows, there was inappropriate conduct in the nature of interference with officers on the part of the plaintiff in his interaction with the WCOs upon his apprehension for a no wake zone violation.  Accordingly, there is not a basis in fact or in law to consider it to be in genuine dispute whether the plaintiff did commit the violations or whether the plaintiff conducted himself in a proper manner when he was stopped on the lake for boating misconduct.  It follows that the plaintiff's post-conviction description of the incident in a manner starkly

different from a description of an incident in which the plaintiff had violated boating rules and then interfered with the apprehending officers was something reasonably seen by the WCOs to give rise to a response within appropriate official channels on the part of the WCOs.

The plaintiff's brief asserts that the Kane and Britcher recommendations did not concentrate on the plaintiff's conduct on the lake or on how that conduct interfered with the officers' investigation. This assertion is plainly incorrect, as a reading of the recommendations readily reveals. The Britcher memorandum (Doc. 44-2, pp. 53-54) states:

> On Saturday 3 September 2005, this officer along with WCO Terrance Kane were on routine boat patrol on Raystown Lake, Penn Township, Huntingdon County. We were in the no wake zone at the Seven Points Marina when we received a radio transmission from the USACE. Ranger Justin Robbins called to inform us that there was a major no wake violation occurring in the neighboring no wake zone near Marty's Island. I began heading that way while maintaining radio contact with Ranger Robbins. Ranger Robbins indicated that there was a large white boat moving well above no wake speed rounding the island and moving out of his sight. He went on to indicate that there were also two PWC's heading towards the buoy line at greater than no wake speed. As I

was talking with Ranger Robbins I maneuvered the marked patrol boat along the no wake buoy line and WCO Kane and I both observed the two PWC's violate the no wake zone at approximately 1513 hours.  Both were traveling above no wake speed and one even spun out splashing the other.  The two matching PWC's proceeded in front of our vessel into the channel and headed North on the lake.

As we cleared the island we did not see any white boat in violation and attempted to stop the two PWC's.  The two PWC's continued north and finally stopped near mile marker 6, after I used the patrol boats siren.  Officer Kane instructed both operators to maneuver their vessel to either side of the patrol boat.  Before the operators even got close the older adult began yelling and screaming at WCO Kane and I.  WCO Kane began boarding the one located on the starboard side.  I initiated a boarding of the PWC on the port side bearing registration PA 4699 CB.  I asked the operator for his registration certificate and safe boating education certificate.  The operator was able to produce both cards and was identified as on Theodore Cletus Lehmier, DOB 03/29/1955.  Mr. Lehmier, still yelling, asked why we were stopping them.  I indicated to Mr. Lehmier that they were observed violating the no wake zone.  Upon learning this Mr. Lehmier became very belligerent and continued yelling at me.  I asked Mr. Lehmier several times to quite down and attempted to finish the boarding.  I was seated on the port gunwale of the patrol vessel with my right arm and leg extended to attempt to secure and stabilize Mr. Lehmier's vessel.  When asking to examine the required fire extinguisher, Mr. Lehmier again became very loud and even stood up on his PWC to get into my face.  I immediately

19

stood up and instructed Mr. Lehmier to sit down and quit yelling. Mr. Lehmier began yelling that he had the constitutional right to know why we were stopping him and could say anything he wanted. Mr. Lehmier had the other required equipment on board his vessel.

WCO Kane was finishing up his boarding at about this same time and indicted[3] that the second operator, Mr. Lehmier's son, had an unserviceable fire extinguisher on board. At hearing this Mr. Lehmier became very loud again stating that he was checked last night and that officer must have broken the extinguisher. He went on to state. That the officer the night before was nice and found no violations and that WCO Kane and I were "river Nazis". At this point I informed Mr. Lehmier that he was going to be cited for the no wake violation and that if he didn't calm down he would also be cited for disorderly conduct. Mr. Lehmier calmed down briefly. I collected my citation pad from my patrol bag and sat on the aft portside seat to complete the paper work. WCO Kane had finished with his citation and was talking with the second operator when Mr. Lehmier began yelling once again. WCO Kane approached Mr. Lehmier and asked him once again to quit yelling and calm down. As WCO Kane approached Mr. Lehmier, Mr. Lehmier stood up on his PWC again and got into WCO Kane's face stating, "What are you going to hit me? Is this going to be another Rodney King, should I video this?" WCO Kane stated that maybe we should be videoing your behavior.

---

3. We believe that WCO Britcher intended to use the word "indicated".

Mr. Lehmier continued to yell and berate us.  I finally told Mr. Lehmier to quiet down. He would not, so I indicated to him that he would be getting another citation.  I looked up both the elements of disorderly conduct (Title 18) and interference (Title 30) and ascertained that interference would be the more appropriate charge.  As I was finishing up the paper work another PWC passed our location, Mr. Lehmier's son asked WCO Kane if pulling two skiers was a violation.  WCO Kane acknowledged that it was.  Mr. Lehmier began yelling, demanding that we stop that PWC since it was in violation.  I stated to Mr. Lehmier that we could not because we were busy with him currently.  After issuing Mr. Lehmier his citations WCO Kane told them they would need to proceed somewhere and get a fire extinguisher or head back to Snyder's Run where the launched.  Mr. Lehmier decided to leave the lake.  WCO Kane and I escorted them back to Snyder's Run and watched them pull up to the dock. I then began to head back to the main channel at idle speed.  About halfway out we encountered some individuals from my home church and talked to them for approximately 10 minutes before continuing to the channel.

Mr. Lehmier contacted the South Central Region Office to file a complaint about WCO Kane and I.  Mr. Lehmier was instructed to do so in writing and if he felt unjustly cited to request a hearing.  Mr. Lehmier did follow up his call with a complaint letter which he sent to not only to the PFBC but also to Judge Jamison  as well as members of the General Assembly.  In his complaint Mr. Lehmier accused WCO Kane of attempting to head butt and spitting in his face.  Mr. Lehmier also accused both officers of threatening to beat the shit out of him".  Mr. Lehmier also

21

followed up his letter with an on air
conversation on the Bob Dergen show.  As a
last resort to attempt to get his citation
squashed Mr. Lehmier contacted Sgt. Phil
Harchack at the Huntingdon PSP barracks and
attempted to launch an investigation reference
his claims.

On 22 November 2005 a summary trial was
held at District Court 20-3-04 with District
Judge Mary Jamison presiding.  After two hours
of testimony, during which Mr. Lehmier and his
witnesses were caught in various lies about
the event, Judge Jamison found Mr. Lehmier and
his son both guilty on all charges.  When she
announced this Mr. Lehmier became belligerent
with Judge Jamison and accused her of calling
him a liar.  Mr. Lehmier was instructed that
he had 30 days during which his attorney,
Robert Covell, could appeal the verdict.  No
appeal was filed.

Due to the circumstances of this case it
is the recommendation of this officer and WCO
Kane that Mr. Lehmier's boating privileges be
suspended for a period of two years.

The Kane memorandum (Doc. 44-2, page 125) states:

Corey, as requested, an overview of the
interaction with the above defendant.

The interaction we had with Mr. Lehmier and
his son is still one of the most troubling
that I have dealt with in my career. Mr.
Lehmier failed to comply with most of our
commands throughout the entire interaction
with him.  Mr. Lehmier displayed no respect
for two uniformed officers.  Mr. Lehmier
attempted to escalate the situation at every
opportunity into one of a physical

confrontation.  It was only by our patience
and training that this incident did not turn
into what Mr. Lehmier wanted it to become.

His complaint letter to Regional Manager
Lauver was equally troubling.  His memory of
the events on that day are nothing less than a
very distorted and twisted recolection [sic]
of those events.  The outrageous accusations
of us shouting at him to "Shut up", attempting
to head butt him, spitting on him and stating
that I was going to beat the shit out of him
if he did not shut up are outrageous.  His
reference to a "Rodney King incident" also
speaks to his frame of mind to wit: I think he
was attempting to escalate this contact into a
physical confrontation.

Mr. Lehmier has also shown no respect for the
court system.  After being sworn in, Mr.
Lehmier blatantly and repeatedly failed to
provide truthful testimony.  Mr. Lehmier
accused me of using the "F" word during
testimony, but failed to mention this
important detail in his complaint letter.

One of the most disturbing things about this
incident is, based on the actions of Mr.
Lehmier and his testimony in court, he has set
an example for his step son, Carl Zachary
Lehmier, to follow.

Based on my observations and the actions of
Mr. Lehmier, I would recommend revocation of
Mr. Lehmier's boating privileges for a period
of two years.

For the officers to have reported the episode in the manner in which it is reported was no more retaliatory that would be many law enforcement officers' written reports summarizing the facts and the procedural developments of a violation event and the ensuing prosecution to an administrative or regulatory board so that an appropriate administrative action can be taken on the basis of the violation event.  They were reporting the result of the prosecution.  They were reporting related matters of potential relevance to the regulatory body such as statements of the actor indicating his acceptance of responsibility or, on the other hand, his refusal to accept responsibility for the conduct of which he had been convicted.

The plaintiff has not shown that the plaintiff is entitled to a judgment as a matter of law.  It will be recommended that the plaintiff's motion for summary judgment be denied.

**<u>The Defendants' Motion for Summary Judgment</u>**.

The first of the arguments of the defendants in support of their motion for summary judgment is that the plaintiff's claim that he was retaliated against for exercising his First Amendment rights is barred because the state courts have already decided the issue and have dismissed it. We consider the plaintiff's First Amendment retaliation claim to be the claim that is stated by the plaintiff in the First and in the Fourth causes of action of his complaint. A claim brought in a federal court action is barred if the claim has already been litigated in a state court proceeding prior to the initiation of the federal action or if the federal claim is inextricably intertwined with the state adjudication such that federal relief can only be predicated on a determination that the state court was wrong. This doctrine has come to be called the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine embodies the principles set forth in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Section 1257 of Title 28 of the United States Code

confers on the United States Supreme Court appellate jurisdiction to review final judgments of the states' highest courts.  The *Rooker-Feldman* doctrine is the doctrine that, by negative implication, inferior federal courts lack subject matter jurisdiction to review final judgements of the states' highest courts.  *E.B. v. Verniero*, 119 F.3d 1077, 1090 (3d Cir. 1997).  The *Rooker-Feldman* doctrine has been interpreted to also apply to final decisions of lower state courts. *Id*.  "District courts lack subject matter jurisdiction once a state court has adjudicated an issue because Congress has conferred only original jurisdiction, not appellate jurisdiction, on the district courts." *In re Gen. Motors Corp. Products Liability Litigation*, 134 F.3d 133, 143 (3d Cir. 1998).  The existence of a state court judgment in another case bars a subsequent federal proceeding under *Rooker-Feldman* "when entertaining the federal court claim would be the equivalent of an appellate review of that order." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir.  1996). "Under the *Rooker-Feldman* doctrine, lower federal courts cannot entertain constitutional claims that have been previously adjudicated in state court or that are inextricably intertwined with a state adjudication."

*Whiteford v. Reed*, 155 F.3d 671, 673-74 (3d Cir. 1998).  In

other words:

> *Rooker-Feldman* precludes a federal action
> if the relief requested in the federal
> action would effectively reverse the
> state decision or void its ruling.
> Accordingly, to determine whether *Rooker-
> Feldman* bars [a] federal suit requires
> determining exactly what the state court
> held . . . . If the relief requested in
> the federal action requires determining
> that the state court's decision is wrong
> or would void the state court's ruling,
> then the issues are inextricably
> intertwined and the district court has no
> subject matter jurisdiction to hear the
> suit.

*Whiteford*, *supra*, 155 F.3d at 674 (quoting *FOCUS, supra*, 75 F.3d

at 849).  The Commonwealth Court in the plaintiff's appeal to

that Court of his one year suspension by PFBC did not decide the

issue of First Amendment retaliation, considering it to be

foreclosed as a function of the procedural status of the case

before it.  For this court to take up the issue would not

effectively reverse a Commonwealth Court decision.  It would

have no effect upon a Commonwealth Court ruling.

The defendants are not entitled here to a summary judgment in their favor on *Rooker-Feldman* grounds.

The defendants argue next that the plaintiff's First Amendment claim should be dismissed because the mere recommendation of a two year boating privilege suspension is not a sufficiently adverse action for the purpose of a Section 1983 claim.

Retaliation for exercising constitutional rights may itself be a constitutional violation. A plaintiff claiming that a defendant has retaliated against him for exercising his constitutional rights must prove that: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered "adverse action" at the hands of a state actor; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision of the defendants. *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002). Once a plaintiff has made his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that he of she would have made the same decision absent the protected conduct. *Id.*

The recommendation by a WCO of a two year suspension of the boat operating privilege of a person who has been convicted of boating law violations is not a sufficiently adverse action to be seen to constitute retaliation against the person for the person's exercise of his First Amendment rights. It is obviously an action that is within the range of ordinary actions of a WCO to provide a statement to the PFBC, the Commission that has the responsibility to issue and to revoke boating privileges, when the WCO has personal knowledge of the violations and of surrounding material facts. It is not shown by the plaintiff that it is out of the ordinary for the officer to recommend a revocation. A two year revocation was recommended here by defendant Britcher. A one year revocation was recommended here by defendant Austen and imposed by the PFBC. Nothing is presented to indicate that these recommendations were out of the ordinary when compared to similar cases. The defendants' motion for summary judgment is meritorious because there is not a reasonable basis to infer in the context of this case that a one year suspension or revocation was out of the ordinary in similar cases or that the defendants' recommendations here were out of the ordinary. The

prospect of a recommendation from a WCO of a one or two year

boating privileges suspension following one's boating

infractions and one's complaints about the WCOs' conduct would

not reasonably be expected to deter one in speaking out.  There

is not evidence that the recommendation, considered in context,

was an adverse action.


        The defendants argue that their motion for summary

judgment should be granted because the plaintiff's evidence that

the two year suspension recommended by defendant Britcher was

imposed in retaliation for the exercise by the plaintiff of a

constitutional right is not sufficient to support a reasonable

inference that it was in fact imposed in retaliation.  We agree.

The plaintiff had been cited for  violations, including that he

interfered with the WCOs.  He was convicted.  The WCOs then made

a revocation recommendation to the PFBC.  The plaintiff relies

upon the fact that in the course of these events he wrote

letters and participated in a radio interview to support an

inference that the revocation recommendation was retaliatory.

Apart from the fact that the plaintiff has made media statements, the writings of defendants Britcher and Kane are the sum and substance of the plaintiff's evidence of retaliation. (Doc. 44-2, pp. 125, 53-54). The plaintiff contends that these focus not as the plaintiff believes they should on the plaintiff's conduct on the lake or on how that conduct interfered with these officers' performance of their duties but rather focus improperly upon the plaintiff's exercise of his First Amendment rights. Officer Kane's memorandum, quoted in full above, begins, "Corey, as requested an overview of the interaction with [Theodore Lehmier]. The interaction we had with Mr. Lehmier and his son is still one of the most troubling that I have dealt with in my career." It ends, "Based on my observations and the actions of Mr. Lehmier, I would recommend revocation of Mr. Lehmier's boating privileges for a period of two years." The recommendation memorandum of defendant Britcher, quoted in full above, addresses the September 3, 2005 events at Raystown Lake. The references to the plaintiff's complaints and statements are not stated in a manner suggesting that the revocation recommendation is based upon those complaints and statements. As already emphasized herein, where

the person cited had criminally interfered with the officers on the lake and then had made accusations reflecting his continued refusal to accept responsibility for his infractions, this conduct was material to whether he would or would not undertake to use his boating privilege responsibly. It was important information. We agree with the defendants that there is not evidence that supports a reasonable inference that any retaliatory animus focused upon what the plaintiff had said to the media and in letters of complaint had any determinative effect upon the outcome of the revocation process. The inference reasonably drawn from the memoranda that the plaintiff advances to support his First Amendment retaliation theory shows rather that any retaliatory animus on the part of the defendants towards the plaintiff was the result of what had occurred on the lake. The defendants should be granted summary judgment as to the plaintiff's First Amendment retaliation claim.

We will now address the motion of the defendants for summary judgment as to the plaintiff's second cause of action, claiming that the defendants violated the 14th Amendment right of the plaintiff to equal protection of the law. The plaintiff in

the second cause of action alleges that by seeking revocation of the plaintiff's boating privileges for a period of two years and by accepting a revocation of those privileges for a period of one year, the defendants have treated the plaintiff differently than similarly situated persons cited with similar no wake zone and interference with officers violations. The defendants ask the court to grant summary judgment in their favor as to this cause of action because there is not evidence of different treatment as to recommended revocation periods for similarly convicted persons, because there is no evidence of intentionally different treatment and on the basis of *Rooker-Feldman*. The plaintiff does not purport to have evidence to support the contention of dissimilar treatment as to recommended dispositions. *See* Doc. 51, pp. 25-27. It will be recommended that the defendants' motion for summary judgment as to this claim be granted because, after full discovery, the plaintiff does not have evidence that supports the claim.

In the third and fifth causes of action, the complaint challenges the constitutionality of an application of 35 Pa. C.S. § 904 (Interference With An Officer) to his conduct on

September 3, 2005 and challenges the procedures and occurrences attendant to the summary offense trial before a Pennsylvania magisterial district judge in which the plaintiff was convicted.

The defendants contend that the claims of the plaintiff in the third and fifth causes of action are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  We agree.

In *Heck v. Humphrey*, the plaintiff filed a 42 U.S.C. § 1983 damages action against two county prosecutors and an Indiana State Police investigator.  The plaintiff in *Heck* alleged that the defendants had engaged in an unlawful, unreasonable, and arbitrary investigation which led to the plaintiff's arrest; that the defendants had knowingly destroyed exculpatory evidence; and that the defendants had caused an illegal voice identification procedure to be used at trial.  The United States Supreme Court affirmed the lower court's dismissal of the action.  The Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must

prove that the conviction or sentence has been reversed on

direct appeal, expunged by executive order, declared invalid by

a state tribunal authorized to make such [a] determination, or

called into question by a federal court's issuance of a writ of

habeas corpus, 28 U.S.C. § 2254." *Id*. at 486-87 (footnote

omitted).  Even if a plaintiff has exhausted available state

remedies the plaintiff has no cause of action under § 1983

unless and until the conviction or sentence is reversed,

expunged, invalidated, or impugned by the granting of a writ of

habeas corpus. *Id*. at 489.  The Court noted that the "issue with

respect to monetary damages challenging conviction is not . . .

exhaustion; but rather, the same as the issue was with respect

to injunctive relief challenging conviction in *Preiser*: whether

the claim is cognizable under § 1983 at all."  *Id.* at 483.


        The defendants ask the court to enter summary judgment

in their favor and against the plaintiff as to these (third and

fifth) causes of action in that each is a collateral attack upon

the convictions of the plaintiff.  As to each cause of action,

if the plaintiff were to prevail it would implicitly be on a

basis that would also serve as a basis under law to determine his criminal summary offense convictions to not be valid.

The plaintiff presents no significant argument against the defendants' motion for summary judgment as to the third and fifth causes of action. The defendants' motion should be granted as to these causes of action.

Defendants Austen and Kane argue that there is not an evidentiary basis for a finding that either of them was personally involved in conduct that is the subject matter of the plaintiff's claims. The plaintiff responds that defendant Austen was responsible for training defendant Britcher and did not adequately train him in First Amendment and due process issues. The plaintiff does not respond as to the defendants assertion of an absence of evidence of personal involvement on the part of defendant Kane.

The evidence relating to defendant Kane is that he sent a memorandum to defendant Britcher, who then sent the recommendation to the PFBC.

We will recommend that the defendants' motion for summary judgment be granted as to all defendants for the reasons already discussed.  If the court does not accept this recommendation, the complaint should not be dismissed as to defendants Austen and Kane on the basis of a lack of personal involvement.

For the foregoing reasons it is recommended that the plaintiff's motion for summary judgment be denied, that the defendants' motion for summary judgment be granted and that the Clerk be directed to enter judgment in favor of the defendants and to close the file.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  July 9, 2010.